## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LASSANA DAO,

       Petitioner,

v.                                                         No. 2:26-cv-0370 JB/DLM

HECTOR RIOS, et al.,

       Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Lassana Dao's Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2241. (Doc. 1.) Petitioner challenges the legality of his continued detention on two grounds. First, he asserts that Immigration and Customs Enforcement (ICE) unlawfully revoked his Order of Supervision (OSUP) without complying with mandatory procedures in violation of governing regulations and the Due Process Clause. Second, he argues that his post-order detention has become unlawful because his removal is not significantly likely in the reasonably foreseeable future.

Having reviewed the record, the parties' submissions, and the governing law, the undersigned recommends that the Petition be **GRANTED IN PART** to the extent Petitioner seeks release based on ICE's unlawful revocation of his OSUP and the lack of a significant likelihood of removal in the reasonably foreseeable future. The undersigned further recommends that the Petition be **DISMISSED IN PART** to the extent Petitioner seeks relief under the Administrative Procedure Act or 8 U.S.C. § 1226 because those theories do not provide an independent basis for

habeas relief in a post-removal-order detention case governed by § 1231.[1]

## I.      Factual and Procedural Background

Petitioner Lassana Dao is a 51-year-old native and citizen of Ivory Coast. (Docs. 1 at 7; 8 at 1; 8-1 ¶ 6; 8-2 at 1–2.) He applied for admission to the United States on March 5, 2018, at the Laredo, Texas Port of Entry, where he requested asylum. (Docs. 1 at 7; 8 at 1 (citing Doc. 8-2 at 2); 8-1 ¶ 6.) An Immigration Judge (IJ) denied his asylum and withholding applications on October 15, 2018, and ordered him removed to Ivory Coast. (*See* Docs. 8 at 1 (citing 8-2 at 2); 8-3 at 3.) The Board of Immigration Appeals dismissed his appeal on April 1, 2019, rendering the removal order final. (*See* Docs. 8 at 1–2 (citing Docs. 8-2 at 2; 8-3); 8-1 ¶ 7.) Petitioner has no criminal history. (Doc. 8-2 at 2.)

On May 31, 2019, ICE released Petitioner from custody on an OSUP. (*See* Docs. 1 at 7; 8-1 ¶ 8; 8-2 at 2.) Petitioner complied with check-in requirements and maintained employment authorization. (*See* Doc. 1 at 7–8.) His spouse, who was granted asylum on January 24, 2024, filed an I-730 petition (Refugee/Asylee Relative Petition) on his behalf on March 31, 2025. (*See id.*) The I-730 petition  is currently pending. (Doc. 8-2 at 2.)

On November 18, 2025, Petitioner appeared for a scheduled OSUP check-in at 26 Federal Plaza in New York City, where ICE officers arrested him without incident. (Docs. 1 at 8; 8-1 ¶ 9; 8-2 at 1–2.) ICE first transferred Petitioner to El Paso, Texas, and then to the Otero County Processing Center (OCPC) in Chaparral, New Mexico, where he is currently detained. (Docs. 1 at 4; 8-1 ¶ 9.)

On December 5, 2025, ICE completed pre-removal checks and forwarded Petitioner's file

---

[1] On March 3, 2026, Senior United States District Judge James O. Browning entered an Order of Reference referring this case to the undersigned "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 9.)

to the travel-document team. (Doc. 8-1 ¶ 10.) On December 22, 2025, ICE requested a travel document for Petitioner and followed up on January 16, 2026. (*Id.* ¶¶ 11–12.) ICE twice submitted travel-document requests to headquarters, on February 8 and February 15, 2026; both were rejected. (*Id.* ¶¶ 14–17.) As of February 26, 2026, Petitioner remains "pending travel document issuance." (*Id.* ¶ 18.)

Petitioner filed his Petition for Writ of Habeas Corpus on February 11, 2026, challenging the legality of his arrest, the revocation of his OSUP, and his continued detention. (Doc. 1.) The Government Respondents filed their response on March 3, 2026, asserting that Petitioner is detained under 8 U.S.C. § 1231(a) and remains within the presumptively reasonable six-month period described in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 8.) The Warden Respondent filed a notice on March 4, 2026, joining fully in the Government's response and taking no separate position. (Doc. 12.) Petitioner filed his reply on March 8, 2026. (Doc. 13.) The matter is now fully briefed and ready for disposition.

## II.    Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See*

*Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

### III.   Discussion

Petitioner challenges the legality of his continued detention on two independent grounds. First, he asserts that ICE unlawfully revoked his Order of Supervision in violation of governing regulations and the Due Process Clause. (*See* Doc. 1 at 8–12.) Second, he argues that his post-order detention has become unlawful because removal is not reasonably foreseeable. (*See id.* at 13–18.) The Proposed Findings and Recommended Disposition (PFRD) addresses each argument in turn.

### A.   Revocation of Petitioner's order of supervision.

Petitioner first contends that his detention is unlawful because ICE revoked his OSUP without complying with the procedures mandated by 8 C.F.R. § 241.4(l). (*See* Docs. 1 at 2–3, 8–12; 13 at 3–4.) The record confirms that ICE processed Petitioner as a "Bag and Baggage" case, generated an "Order of Supervision Revocation," and recorded informal interview proceedings.[2] (*See* Doc. 8-2 at 3.) But Respondents have produced no revocation notice, no written explanation of reasons, no interview record, no custody review, and no determination that removal had become significantly likely in the reasonably foreseeable future. Courts across the country—including in

---

[2] "A 'bag and baggage' letter 'issues once the government determines that there is no further administrative relief available to an alien who is subject to an order of removal, and instructs the alien to appear at a specified location and time for removal.'" *Hakhinyan v. Holder*, 343 F. App'x 367, 369 n.2 (10th Cir. 2009) (quoting *Singh v. Gonzales*, 494 F.3d 1170, 1172 n.3 (9th Cir. 2007)).

this District—have held that such omissions violate the mandatory procedures governing revocation of supervised release and require habeas relief.

In *Nguyen v. Bondi*, the District of New Mexico held that ICE violated due process when it re-detained a noncitizen previously released under § 1231(a)(3) without complying with the procedures in § 241.4(l) and § 241.13(i). *See Nguyen v. Bondi*, No. 2:25-cv-1198 KWR/JMR, 2026 WL 892491, at *4–6 (D.N.M. Mar. 31, 2026). Nguyen had lived in the United States for decades, had been on supervised release for 20 years, and was taken into custody without any revocation notice, interview, or explanation. *Id.* at *1–2, 5. The court first noted that Congress has designated §§ 241.4(l) and 241.13(i) as the operative procedures ICE must follow when seeking to revoke supervised release under § 1231(a)(3) or (a)(6). *Id.* at *5 (citing *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001)). The court explained that § 241.4(l) supplies the "normal review process" for revoking supervised release—including written notice, a records review, and an interview—while § 241.13(i) provides the parallel procedures applicable when DHS asserts a significant likelihood of removal in the reasonably foreseeable future. *See id.* The court then emphasized that the regulations require ICE to (1) revoke supervised release through written notice, (2) provide an informal interview, and (3) make a contemporaneous determination—based on changed circumstances—that removal has become significantly likely in the reasonably foreseeable future. *See id.* at *5–6 (discussing 8 C.F.R. § 241.13(i)(2)–(3); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). Because nothing in the record "suggest[ed] that any of these procedures were followed[,]" the court held that ICE's revocation was unlawful and ordered immediate release. *Id.* at *6.

The court then applied the *Mathews* framework and held that ICE's failure to follow §§ 241.4(l) and 241.13(i) was not merely a regulatory defect but a constitutional violation requiring

release. *See id.* at *7–8. The court explained that due process requires consideration of (1) "the private interest that will be affected[,]" (2) "the risk of erroneous deprivation . . . through the procedures used[] and the probable value" of additional safeguards, and (3) the Government's interest. *Id.* at *7 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Applying those factors, the court found that the petitioner's liberty interest in remaining free from detention was "very strong," that the risk of erroneous deprivation was "high" where ICE provided no notice, interview, or custody review, and that the Government had "little to no interest" in disregarding its own regulations. *Id.* at *7–8. Because ICE re-detained the petitioner without the safeguards required by §§ 241.4(l) and 241.13(i), the court concluded that the resulting deprivation violated due process and that release was the appropriate remedy. *Id.* at *8.

The same is true here. Petitioner was released on an OSUP in 2019, complied with reporting requirements, maintained employment authorization, and has no criminal history. He appeared for a routine check-in and was arrested without any advance notice. And despite having every opportunity to do so, Respondents have produced no revocation notice, no written explanation of reasons, no interview record, no custody-review documentation, and no contemporaneous determination that removal had become significantly likely in the reasonably foreseeable future. ICE then transferred Petitioner across the country and detained him for months while its travel-document efforts repeatedly failed. Under the *Mathews* factors, Respondents' failure to provide any of the required safeguards created a substantial risk that Petitioner would be detained in error, and Respondents have identified no governmental interest in bypassing the procedures that §§ 241.4(l) and 241.13(i) mandate. As in *Nguyen v. Bondi*, the absence of these required procedures renders Dao's revocation unlawful and his resulting detention unconstitutional.

Other courts within this Circuit have reached the same conclusion. In *Owdetallah v. Bondi*, the court granted habeas relief where ICE re-detained a noncitizen at a routine check-in without providing a revocation notice, identifying any changed circumstances, or conducting the required post-detention interview. *See Owdetallah v. Bondi*, No. 25-cv-1546 SLP, 2026 WL 483648, at *2–4 (W.D. Okla. Feb. 20, 2026). The *Owdetallah* court emphasized that ICE bears the burden to produce the revocation materials and to demonstrate compliance with § 241.13(i), because the supporting facts "were necessarily in ICE's possession at the time of re-detention and remain within its control." *Id.* at *3. ICE offered excuses for its failure to provide these documents—including an expedited schedule and holidays—but the court rejected those arguments, noting that ICE had managed to file other exhibits, including documents nearly 20 years old, yet still did not produce the OSUP, the revocation notice, or any evidence of changed circumstances. *See id.* at *4. Because ICE bears the burden under § 241.13(i) and failed to comply with the regulation's mandatory procedures, the court concluded that habeas relief was required. *Id.* at *5. That same failure to produce the required materials is present here.

Courts outside this Circuit have likewise rejected ICE's attempts to rely on generalized or unsupported assertions. In *Yee S. v. Bondi*, ICE issued a boilerplate revocation notice stating only that it was "in the process of obtaining a travel document" and that removal was "significantly likely." *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 897 (D. Minn. 2025) (emphasis omitted). The court held that such generalized assertions do not satisfy § 241.13(i)(2), which requires ICE to identify specific, individualized changed circumstances and to consider the factors listed in § 241.13(f). *Id.* at 900–02. As the court explained:

> Those factors include, but are not limited to, the history of the noncitizen's efforts to comply with the order of removal, the history of ICE's efforts to remove noncitizens to third countries that are an option for this noncitizen's removal, the

> reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of noncitizens to the countries in question.

*Id.* at 901 (citing 8 C.F.R. § 241.13(f)). The court further explained that ICE must identify a country willing to accept the petitioner and provide evidence of actual progress toward removal, and that vague statements about obtaining travel documents are insufficient. *Id.* Because ICE failed to identify any changed circumstances, failed to identify any accepting country, and failed to show any concrete steps toward removal, the court ordered immediate release. *Id.* at 902. Here, ICE has not identified any changed circumstances, has not identified any country willing to accept Petitioner, and has not shown any concrete steps toward removal—let alone produced even a boilerplate notice or any individualized explanation of progress.

The same pattern appears in *Nguyen v. Hyde*, where the court held that ICE bears the burden under § 241.13(i)(2) to identify specific, individualized changed circumstances showing that removal has become significantly likely in the reasonably foreseeable future. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149–53 (D. Mass. 2025). There, ICE issued a revocation notice asserting that "changed circumstances" existed and that the case was under review for a travel document, but the court found those statements conclusory and unsupported by evidence. *Id.* at 149–50. Even after ICE submitted a repatriation memorandum of understanding, statistics on removals to Vietnam, and a supplemental declaration, the court held that ICE had not shown any changed circumstances specific to the petitioner, had not demonstrated progress on his travel-document request, had not identified any response from Vietnam, and had not made the individualized, factor-based determination required by § 241.13(f). *Id.* at 150–52. Because ICE failed to meet its burden, the court ordered immediate release. *Id.* at 152–53. Respondents have produced even less here.

Taken together, these decisions reflect a uniform rule: before re-detaining a noncitizen previously released under § 1231(a)(3), ICE must strictly comply with the mandatory procedures in §§ 241.4(l) and 241.13(i), provide written notice and an actual interview, and make a contemporaneous, evidence-based determination—grounded in the § 241.13(f) factors—that changed circumstances now make removal significantly likely. Courts across jurisdictions, including within this Circuit and this District, have granted habeas relief whenever ICE fails to produce the required documentation or to substantiate a changed-circumstances finding. Respondents have produced no revocation notice, no interview record, no written reasons, no evidence of changed circumstances, and no indication of any individualized likelihood-of-removal determination. Under the weight of relevant authority, and under the due-process analysis applied in these cases, ICE's revocation of Petitioner's OSUP was unlawful. Accordingly, the undersigned recommends that the Petition be granted and that Petitioner be released immediately.

**B.      Petitioner's detention is governed by 8 U.S.C. § 1231.**

Even if the Court were to decline relief on the OSUP-revocation ground, the Petition should independently be granted because Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted in *Zadvydas*.

**1.      Petitioner's detention is governed by 8 U.S.C. § 1231, not §§ 1225 or 1226.**

As an initial matter, although Petitioner's filings reference 8 U.S.C. §§ 1225 and 1226 and describe his detention as if it were a "bond" case arising in pending removal proceedings (*see* Doc. 1 at 3, 11–12, 16–18), those provisions do not apply here. Petitioner is not detained during the pendency of removal proceedings, and the procedural protections associated with § 1226(a) bond determinations therefore do not apply. Rather, Petitioner is detained after entry of a final order of removal, and his detention is therefore governed exclusively by 8 U.S.C. § 1231.

Post-removal detention is generally governed by 8 U.S.C. § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order . . . ." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). Pursuant to the Immigration and Nationality Act (INA), the Government must remove a noncitizen from the United States within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

The Government may detain a noncitizen beyond the initial 90-day removal period only for the time "reasonably necessary" to effectuate removal. *Zadvydas*, 533 U.S. at 699; *see also* 8 U.S.C. § 1231(a)(6). Detention for six months is "presumptively reasonable." *See Zadvydas*, 533 U.S. at 701. Once that period passes, a detainee need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to the Government to rebut that showing with evidence. *Id.* This framework applies equally to inadmissible and arriving noncitizens. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005).

With this framework in mind, the undersigned turns to whether Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future.

**2.      Petitioner's APA and § 1226 arguments do not alter the § 1231 analysis.**

Petitioner's second claim for relief also invokes the Administrative Procedure Act (APA) and 8 U.S.C. § 1226, asserting that ICE revoked a prior custody determination without adequate explanation and without providing a bond hearing. (*See* Doc. 1 at 13–18.) But those arguments

rest on a mistaken legal premise. As explained above, Petitioner is not detained under § 1226, nor is he in pre-removal proceedings. He is detained after entry of a final order of removal, and his custody is therefore governed exclusively by 8 U.S.C. § 1231. Because § 1231 provides the specific statutory framework for post-removal-order detention, the undersigned evaluates Petitioner's custody under *Zadvydas*, not under § 1226 or the standards applicable to bond determinations. And because Petitioner's APA claim depends on procedures that apply only to custody determinations under § 1226—a statute that does not govern post-order detention—that claim should be dismissed as legally inapplicable. The Court therefore need not reach Petitioner's APA-based arguments to resolve the lawfulness of his continued detention. The dispositive question remains whether, under § 1231(a)(6) and *Zadvydas*, Petitioner's removal is significantly likely in the reasonably foreseeable future.

### 3. Petitioner's cumulative post-removal detention exceeds six months.

Petitioner's current detention began in November 2025, but the reasonableness of post-order detention is not assessed by looking only at the most recent period of custody. The six-month presumption in *Zadvydas* is a practical guide, not a stopwatch. Detention beyond six months is permissible only while removal remains reasonably foreseeable, and courts routinely consider the total time a noncitizen has been detained under § 1231(a)(6) when applying that standard. *See Zadvydas*, 533 U.S. at 699–702.

Courts in this district treat cumulative detention as relevant to the six-month presumption. In *Jimenez Chacon v. Lyons*, the court held that the *Zadvydas* clock does not start over when DHS re-detains a noncitizen who was previously released under an OSUP. *See Jimenez Chacon v. Lyons*, 811 F. Supp. 3d 1299, 1309–10 (D.N.M. 2025) (collecting cases). Indeed, allowing DHS to reset the clock through successive cycles of release and re-detention would permit the very form

11

of indefinite detention *Zadvydas* forbids. *See id.* at 1309–10 (quoting *Chen v. Holder*, No. 6:14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015)). The *Jimenez Chacon* court therefore aggregated the petitioner's four months of post-order detention in 2016–2017 with his seven months of detention in 2025, concluding that he had been detained for "at least eleven months" under § 1231(a)(6). *Id.* at 1310. Because that cumulative period exceeded the six-month presumption, the court proceeded to the *Zadvydas* foreseeability analysis.

The court in *Ndou v. Noem* similarly rejected DHS's attempt to "reset" the removal period based on later administrative activity. *See Ndou v. Noem*, No. 2:26-cv-0220 KWR/GJF, 2026 WL 686564, at *2–3 (D.N.M. Mar. 11, 2026). The court held that the removal period begins when the original removal order becomes administratively final and does not restart simply because the noncitizen files a motion to reopen. *Id.* at *2. In doing so, the court reaffirmed that DHS may not avoid *Zadvydas* scrutiny by treating each new administrative step as a fresh starting point for detention. *See id.* Because the petitioner had already been detained for more than eight months beyond the original removal period, the court applied the *Zadvydas* framework and concluded that continued detention was unlawful. *Id.* at *3–4.

These decisions reflect a consistent principle—§ 1231(a)(6) detention is measured cumulatively, and DHS may not avoid *Zadvydas* scrutiny by characterizing each new detention as a fresh six-month period.

Here, Petitioner was detained for approximately two months (April 1, 2019 through May 31, 2019) following his final order of removal in 2019. (*See* Doc. 8-1 ¶¶ 7–8.) He has now been detained for an additional five months (November 2025 through April 2026). (*See id.* ¶ 9.) As in *Jimenez Chacon* and *Ndou*, these periods must be counted together for purposes of evaluating the reasonableness of continued detention under § 1231(a)(6). That is seven months of total post-order

detention under § 1231(a)(6). This cumulative period exceeds the six-month presumption and triggers the *Zadvydas* analysis.

4.    **Petitioner's continued detention is unlawful because the record establishes that his removal is not significantly likely in the reasonably foreseeable future.**

Because Petitioner's cumulative post-order detention already exceeds the six-month presumptively reasonable period, the *Zadvydas* framework now governs. *See Zadvydas*, 533 U.S. at 701. Even considering only the current detention period, Petitioner's confinement is already approaching the six-month threshold, and ongoing detention during these proceedings will place it beyond the period deemed presumptively reasonable. Once that threshold is crossed, Petitioner need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to the Government to rebut that showing with evidence. *See id.*

Here, the record demonstrates that DHS has made no concrete progress toward effectuating Petitioner's removal. DHS's own evidence shows: two rejected travel-document requests (Feb. 9 and Feb. 16); no progress since 2019 toward securing a travel document; no indication that the Ivory Coast will issue a travel document; a pending I-730 petition that may legally bar removal; no projected removal date; and no evidence of any country willing to accept Petitioner. These facts mirror the circumstances in which courts in this District have found removal not reasonably foreseeable.

Passive, indefinite waiting for a third-country response does not constitute evidence that removal is reasonably foreseeable. Courts in this District have repeatedly held that detention exceeding six months, combined with failed removal efforts and the absence of any accepting country, constitutes good reason to believe removal is not reasonably foreseeable. In *Lorenzo v. Bondi*, a Guatemalan citizen was subject to an IJ's withholding-of-removal order to Guatemala,

13

but Mexico—the only third-country option DHS pursued—had not responded to DHS's request for acceptance, leaving the petitioner detained for more than six months with no viable removal route. *Lorenzo v. Bondi*, No. 2:25-cv-0923 KWR/GJF, 2026 WL 84521, at *5–6 (D.N.M. Jan. 12, 2026). The court emphasized that a months-old request to Mexico—without any indication of progress—was insufficient to show that removal was reasonably foreseeable, noting that the government's assertions that it was pursuing third-country removal "failed to rebut [the p]etitioner's showing that there [was] no significant likelihood of removal in the reasonably foreseeable future." *Id.* at *6.

Similarly, in *Jimenez Chacon*, the court found that removal was not reasonably foreseeable where, after eleven months of detention, DHS had contacted multiple countries over many months without success and could not identify any country willing to accept the petitioner. *See Jimenez Chacon*, 811 F. Supp. 3d at 1310–11. The court stressed that "[t]he remote prospect of removal—to a hypothetical third country that may eventually choose to accept him—does not make . . . removal reasonably foreseeable." *Id.* at 1310 (citing *Zadvydas*, 533 U.S. at 702). The same conclusion was reached in *Salazar-Martinez v. Lyons*, where the court ordered release after seven months of detention because ICE had submitted repatriation requests to four countries, two had denied the requests, and the remaining two had not responded for over five months. *See Salazar-Martinez v. Lyons*, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025). The court rejected DHS's argument that removal remained foreseeable simply because some countries had not yet declined, explaining that "the mere possibility of repatriation to third countries, without concrete progress, is insufficient to justify continued detention." *Id.* (citations omitted)

As in *Lorenzo*, *Jimenez Chacon*, and *Salazar-Martinez*, Respondents here have no accepting country, no timeline, and no evidence of progress toward effectuating removal. Even considering only the current detention period, removal is still not reasonably foreseeable. Respondents acknowledge that the Ivory Coast has twice rejected travel-document requests, that no other country has agreed to accept Petitioner, and that they cannot provide any timeline for removal. DHS's filings show only internal processing of a travel-document request, with no evidence that any foreign government has been contacted or has agreed to accept Petitioner. Under *Zadvydas*, such speculative and indefinite efforts cannot justify continued detention.

Because Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and because Respondents have not rebutted that showing with evidence, his continued detention violates § 1231(a)(6) as interpreted in *Zadvydas*. Accordingly, the undersigned recommends that Petitioner be released under appropriate conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

### C.    EAJA Attorney Fees.

Petitioner's prayer for relief includes a request for "[r]easonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)." (Doc. 1 at 22.) The Equal Access to Justice Act (EAJA) provides that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

15

The Tenth Circuit has confirmed that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

At this stage, however, Petitioner's request is premature. A party becomes eligible to seek EAJA fees only after entry of a final judgment, and an EAJA motion does not ripen until the time for appeal has expired. *See* 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).

Because no final judgment has been entered, Petitioner is not yet a prevailing party for purposes of the EAJA. If Petitioner ultimately prevails and a final judgment is entered, he may then file an EAJA motion within the time prescribed by statute, at which point the Court can evaluate whether the government's position was substantially justified. Accordingly, the undersigned recommends that Petitioner's EAJA request be denied without prejudice as premature.

## IV.   Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED IN PART** on the grounds that:

   a. ICE unlawfully revoked Petitioner's Order of Supervision without complying with the mandatory procedures in 8 C.F.R. §§ 241.4(l) and 241.13(i), and

   b. Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6), because the Government has not shown that his removal is significantly likely in the reasonably foreseeable future.

2. The Petition should be **DISMISSED IN PART** to the extent Petitioner seeks relief under the APA or 8 U.S.C. § 1226, because those theories do not apply to post-removal-order detention governed by § 1231.

3. The Court should **ORDER** Petitioner's immediate release under reasonable conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

4. Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act should be **DENIED WITHOUT PREJUDICE** as premature, because no final judgment has yet been entered. Petitioner may file an EAJA application at the appropriate time should he ultimately prevail.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE